Manuel **ELLIS**, Appellant,

v.

Victor M. **CARTER**, Appellee.

No. 18623.

United States Court of Appeals
Ninth Circuit.

Feb. 25, 1964.

574

Greenwald, Landrum & Baim, and Howard Marshall, Los Angeles, Cal., for appellant.

Benjamin J. Goodman and Leon M. Cooper, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

This appeal arises out of an action for damages and other relief brought by Manuel M. Ellis against Victor M. Carter.[1] Recovery is sought pursuant to sections 10(b) [2] and 27 [3] of the Securities Exchange Act of 1934, and Rule 10b–5 [4] thereunder. On a prior appeal we held that the foregoing sections of the Act conferred jurisdiction upon federal courts to entertain this case. Ellis v. Carter, 9 Cir., 291 F.2d 270.

The gist of Ellis' complaint is that he and Carter entered into a joint venture to acquire control of the Republic Corporation.[5] In connection with this venture, according to Ellis, he was persuaded to purhase ten thousand shares of Republic common stock at a price in excess of the then market price, by reason of Carter's representation that these shares carried with them a voice in the management of the company. However, once Carter acquired control of the company, Ellis was not invited to join its management. Accordingly, Ellis sought recovery on the theory that Carter had breached his fiduciary duties as a fellow joint adventurer, that Carter had caused Ellis damage by virtue of his misrepresentations, and that Carter's conduct was violative of Rule 10b–5 of the Securities and Exchange Commission.

In an effort to prove these allegations, Ellis produced three witnesses, testified

1. Named as defendants, in addition to Carter, were Herbert J. Yates, Louis Boyar, Benjamin Weingard and Value Line Income Fund, Inc. Before the case went to trial the action was voluntarily dismissed by plaintiff, with prejudice, as to Boyar and Weingard. Service of summons and complaint on Value Line was quashed, and Yates was never served.

2. 48 Stat. 891, 15 U.S.C. § 78j(b) (1958).

3. 48 Stat. 902, as amended, 15 U.S.C. § 78aa (1958).

4. 17 C.F.R. § 240.10b–5.

5. At the time the complaint was filed it was the Republic Pictures Corporation.

on his own behalf, and called Carter as an adverse witness under Rule 43(b), Federal Rules of Civil Procedure. Additionally, as part of his case-in-chief, Ellis offered in evidence, among other things, certain affidavits made by Carter earlier in the proceedings.[6] After Ellis had rested his case, Carter moved for dismissal under Rule 41(b), Federal Rules of Civil Procedure on the ground that the plaintiff had shown no right to relief.

The district court, which was sitting without jury, granted this motion. In the opinion of the court the evidence adduced on plaintiff's case-in-chief preponderated in favor of the defendant. The court found no voting trust, no joint venture, and no other agreement between them which was intended to be legally enforceable. At most, the court found, there was an understanding between Carter and Ellis to join forces and work together, so long as each of them chose to do so, in an effort to oust the incumbent Republic management. Further, the court found that Carter had made no misrepresentation upon which Ellis was entitled to rely, nor did he withhold any information which he was under an obligation to give to Ellis.

The views referred to above were expressed in the trial court's oral opinion from the bench,[7] and in findings of fact thereafter filed.[8] Judgment was accord-

---

6. The affidavits referred to include one filed March 28, 1960, entitled "AFFIDAVIT OF VICTOR M. CARTER IN SUPPORT OF: 1. Motion to dismiss under Rule 12(b) Federal Rules of Civil Procedure; 2. Motion for Security for Costs," and another filed April 11, 1960, entitled "REPLY AFFIDAVIT OF VICTOR M. CARTER TO AFFIDAVIT OF PLAINTIFF."

7. The court rendered the following oral opinion, before preparing a statement of findings of fact and law:
"[This is] * * * not an unusual type of an arrangement, where two stockholders, large stockholders intend to make a joint effort to run a corporation, and that it is nothing that can be enforced; it's a joint operation or a joint venture, if you want to call it that, not in a legal sense, but it is a joint effort which will continue just so long as both parties wish to cooperate, and when they fall out, they fall out, and there isn't anything either one can do to compel the other to continue."

8. We summarize these findings: Carter first began to purchase Republic shares in May, 1958. Although Carter never advised or solicited others to purchase Republic stock, he let it be known that he intended to acquire more stock in the future. By July 1, 1959, Carter owned in his own name 98,337 shares of Republic common stock.
Ellis was, throughout the time in question, a large holder of Republic stock. He and his son, as tenants in common, owned 60,015 shares of Republic in May, 1958. By March, 1961, he, individual-

ly or as tenant in common with his son, had purchased an additional 25,220 shares.
As early as May, 1958, Ellis and Carter had discussed the need for a change of management in Republic. In June, 1958, they met with an attorney to discuss the problems of a proxy fight. But at no time did they enter a joint venture, voting trust, or other agreement.
In July, 1958, Carter began negotiations with Herbert J. Yates, then president and chairman of the board of directors of Republic, in an effort to purchase shares from Yates, his family and associates. In April, 1959, Carter concluded negotiations with Yates for the purchase of 249,383 shares of common stock at ten dollars a share, 29,600 shares of convertible preferred, and $1,264,000 face value of Republic debentures. This transaction was closed July 1, 1959. In the same month, Carter became president and chairman of the board of Republic.
In May or June, 1959, prior to the closing referred to above, Ellis approached Carter and offered to purchase ten thousand of the shares to be acquired by Carter from Yates. Ellis and Carter agreed that Ellis would pay ten dollars per share in advance, that this purchase would be subject to the successful closing of the Yates transaction, and that the ten thousand shares would be placed in escrow for six months following the Yates closing. After the closing was consummated, the ten thousand shares were placed in escrow. In January, 1960, Ellis transferred six thousand of these shares to purchasers, pursuant to agree-

ingly entered for Carter and Ellis appeals.

Ellis argues that the trial court erred in excluding exhibit 33 from the evidence. This exhibit is a collection of reports made by the Republic Corporation to the Securities and Exchange Commission during a period from 1960 to May, 1962. It does not purport to contain all of the reports made by Republic Corporation nor does it include personal reports made by Carter.

Plaintiff first referred to this exhibit during the examination of Carter, who was testifying as an adverse witness. The exhibit was marked for identification purportedly for impeachment purposes. Carter was confronted with one of the documents contained therein, entitled "Change in Control of Registrant," and was asked if he had signed the report. He answered in the affirmative. After Carter had left the stand, plaintiff attempted to introduce the entire exhibit. Defendant's counsel offered no objection to introduction of the document labeled "Change in Control of Registrant" but objected to the introduction of the entire exhibit, on the ground that it contained documents concerning matters not related to issues in the case.[9]

Plaintiff's counsel argued that introduction of the "Change in Control of Registrant" document alone would take that document out of the context provided by the rest of the exhibit, and pointed to another document therein which he thought demonstrated this point. As to that document, defendant's counsel waived objection. Then plaintiff's counsel insisted that his case would be prejudiced unless the entire exhibit were allowed in. The court took the matter under submission.

At the end of the plaintiff's case, but prior to the court's ruling on the admissibility of exhibit 33, the defendant moved for and was orally granted a dismissal under Rule 41(b). Later the defendant moved to have plaintiff's exhibit 33 introduced in its entirety, waiving all objections to its admissibility, and stating that this was being done to complete the record and enable the defendant to utilize some parts of it for a preparation of findings of fact. But counsel for plaintiff then objected to admission of the exhibit, stating that it would be unfair to allow the exhibit in now after depriving him of its use during the course of the trial.[10] In an effort to avoid error at that point, the court sustained plaintiff's objection.

When defendant moved for dismissal at the close of the case, plaintiff should have requested the court to first rule on the admissibility of tendered exhibit 33, so that, if admitted, it could be considered by the court in passing upon the motion. Plaintiff was thus at least partly responsible for the failure to obtain such a ruling on the admissibility of the exhibit before the decision was announced.

However, viewing the failure to rule on admissibility up to that time as, in effect, a rejection of the complete exhibit 33 during the course of the trial, the trial court did not err in doing so. It contained irrelevant material, as re-

---

ments made between Ellis and them as early as May of 1959.

Ellis thought that, by acquiring the ten thousand shares, he would acquire a voice in the management of Republic. But Carter had entered no joint venture or other agreement with Ellis to this effect. He made no misrepresentations, nor did he conceal any information that he was under a duty to disclose to Ellis.

9. Among the documents asserted to be irrelevant were so-called 8–K forms filed for May, 1961, December, 1961, March, 1962, and April, 1962 and listing applica-

tions filed in June, 1961, and August, 1961 with the New York Stock Exchange. These all bear upon transactions for the issuance by Republic of its stock on a voluntary exchange for the common stock of Utility Appliance Corporation and the purchase by America Corporation of some of the stock of Republic and other corporate matters. These events referred to occurred from two to three years after the Yates-Carter transaction.

10. He further gave the impression that if the exhibit were allowed in, he would like to have the case reopened.

ferred to in note 9, which could have easily been removed, but which plaintiff refused to have done. Plaintiff, of course, was not aggrieved by the rejection of the exhibit when finally tendered by defendant after the decision had been announced, because such rejection was in response to plaintiff's objection.

■ Ellis next argues that, when granting the motion to dismiss under Rule 41(b), the trial court should have, but failed to, consider the evidence in a light most favorable to plaintiff. If this had been a trial by jury, the rule that plaintiff would have us apply here is admittedly the correct one.[11] But it has been the position of this court—even before the 1946 amendment to Rule 41 (b)—that in a non-jury case, the trial judge has the power under Rule 41(b) to adjudicate the case on the merits at the conclusion of the plaintiff's evidence, in order to decide whether to grant judgment in the defendant's favor at that time. Barr v. Equitable Life Assur. Soc., 9 Cir., 149 F.2d 634; Young v. United States, 9 Cir., 111 F.2d 823.

The 1946 amendment to the Rule [12] was effectuated with the purpose of clearly incorporating the view of this and the Sixth and Seventh Circuits [13]

into the Rule. See, Notes of Advisory Committee, Rule 41(b), 28 U.S.C.A., page 205; 9 Fed.Rules Serv.Comm., pg. 41b.14; 5 Moore's Federal Practice (2d ed.) § 41.13 [4], pp. 1044–1046.[14]

■ Accordingly, the trial court was not required to deny the 41(b) motion even if the evidence, viewed in a light most favorable to the plaintiff, made a prima facie case. If, from the record as it stood at the close of plaintiff's case, the court was convinced that the evidence preponderated against Ellis, it was empowered to grant Carter's motion.[15]

■ Plaintiff's contention that, in his examination of Carter as an adverse witness under Rule 43(b), he was precluded from examining him as to every issue in the case, is without merit. Likewise, having failed to call other witnesses who were to take the stand for defendant, plaintiff has no basis for complaining that the granting of the motion to dismiss deprived him of the opportunity to cross examine those witnesses. See Global Commerce Corp. v. Clark-Babbitt Indus., Inc., 2 Cir., 255 F.2d 105, 107–108.

■ Ellis argues further, however, that part of the evidence considered by

---

11. All the cases cited by Ellis in his brief on this point properly illustrate the applicable rule where the trial is being had to a jury. See, e. g., Cranston Print Works Co. v. Public Serv. Co., 4 Cir., 291 F.2d 638; Saporito v. Holland-America Lines, 3 Cir., 284 F.2d 761; Larkin v. May Dep't Stores, Co., 3 Cir., 250 F.2d 948.

12. The Rule was amended by the insertion of the following sentence:
"In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

13. Gary Theatre Co. v. Columbia Pictures Corp., 7 Cir., 120 F.2d 891; Bach v. Friden Calculating Mach. Co., 6 Cir., 148 F.2d 407. The Third and Fourth Circuits had held that the function of the judge was the same in jury and non-jury cases where this motion was involved, and consequently had adopted a position con-

sistent with the one Ellis would have us adopt here. Whitley v. Powell, 4 Cir., 159 F.2d 625; Schad v. Twentieth Century-Fox Film Corp., 3 Cir., 136 F.2d 991.

14. After the trial herein, and on January 21, 1963, Rule 41(b) was further amended, the amended form of the rule preserving the principle referred to above, but providing that the motion for dismissal at the close of the plaintiff's evidence, under this rule, shall apply only to non-injury cases, including cases tried with an advisory jury, leaving as the correct motion in jury-tried cases, a motion under Rule 50(a) for a directed verdict. See, Notes of Advisory Committee, Rule 41(b), 28 U.S.C.A., 1963 cumulative annual pocket part, page 48.

15. Huber v. American President Lines, 2 Cir., 240 F.2d 778; Chicago & N. W. Ry. Co. v. Froehling Supply Co., 7 Cir., 179 F.2d 133; Allred v. Sasser, 7 Cir., 170 F.2d 233.

the court in granting the 41(b) motion consisted of testimony by Carter, who had been called as an adverse witness under Rule 43(b). To base part of the findings of fact solely upon evidence received under 43(b) in this situation, argues plaintiff, is to bind the plaintiff with evidence which the law expressly states he must not be bound.

It does not appear to us that the court treated Carter's testimony as binding upon Ellis; his testimony appears to have been weighed as any other evidence in the case. This the trial court was clearly entitled to do. As we stated in Nuelsen v. Sorensen, 9 Cir., 293 F.2d 454, 460:

> "It is true that appellants are not bound by the testimony of adverse witnesses called under rule 43(b). But this means only that they were free to cross examine, contradict and impeach these witnesses, and that even if the testimony was not contradicted, the court was not required to accept it as true. * * * The testimony of an adverse witness is nonetheless evidence in the case, to be weighed with all other evidence and given such probative value as the fact-finder deems appropriate."

Finally, Ellis argues that there is no evidence upon which the trial court could have based some of its findings of fact.[16] We find that the challenged findings are supported chiefly by the testimony of Carter and affidavits of Carter introduced by the plaintiff.[17] Although Ellis' brief does not disclose precisely what objection he has to the challenged findings, it appears that his position anticipates that we would rule that the trial court was not entitled to base findings

upon evidence derived from Carter's testimony. Since we have already held otherwise, it follows that there is adequate support for the challenged findings.

Judgment affirmed.

---

16. Objection is made to findings of fact numbered 2, 3, 4, 5, 6, 8, 9, 10, 11, 14, 19, 20, 21, 22, 23, 25, 26 and the below-quoted part of Finding No. 7:

"Carter did not have or exercise any control over the purchase by Ellis of the shares of the common stock of Republic above referred to, nor did Carter have any beneficial interest in any of said stock, or the aforesaid transactions."

17. See note 6.