**MOTO–SPORTS, INC., d/b/a Auto Sports, Ltd.,**

v.

**GULF STATES TOYOTA, INC., et al.**

**Civ. A. No. 70–H–693.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 4, 1971.

---

Max Garrett, Garrett & Letbetter, Houston, Tex., for plaintiff.

Stephen D. Susman, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Distributors, Inc.

Cecil W. Casterline, Witts, Lee, Pletcher, Douglass & Casterline, Dallas, Tex., for defendant Gulf States Toyota, Inc.

## MEMORANDUM AND ORDER

BUE, District Judge.

Plaintiff has sued Gulf States Toyota, Inc. [hereinafter called GST], Toyota Motor Sales, U.S.A., Inc. [hereinafter called TMS] and Toyota Motor Distributor, Inc. [hereinafter called TMD]. Plaintiff sues for violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225, the Sherman Anti-Trust Act, 15 U.S.C. § 1–7, and the Clayton Act, 15 U.S.C. § 12–27.

Plaintiff is a multiple-line automobile dealer, and at its River Oaks location, Fiats, BMC Corp. Automobiles, Volvos, and Toyotas are sold. Plaintiff has sold Toyota automobiles since September of 1966, which automobiles were imported into the United States by TMS and, until February 28, 1970, were distributed

by its wholly-owned subsidiary, TMD. All franchises that plaintiff has had for a Toyota dealership have been with TMD. The last such franchise held by plaintiff expired automatically by its express terms on February 28, 1970.

In June of 1969, TMS appointed GST to replace its subsidiary as distributor of Toyota automobiles in the southwest region of the United States, including Texas. After many conferences and negotiations with plaintiff, GST, a wholly independent company, made the decision not to extend the offer of a new franchise agreement to plaintiff. Plaintiff alleges that this termination of its dealership agreement was caused by coercion and intimidation of plaintiff by GST, and was due to the fact that plaintiff would not agree to become a single line dealer of Toyota vehicles. Plaintiff alleges further that these actions breached the conditions of the franchise agreement and violated the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1222, in that GST failed to act in good faith by its termination or failure to renew the franchise previously held by plaintiff.

Defendant GST alleges that it acted in good faith in denying plaintiff a new franchise agreement, and that all requests for changes in plaintiff's present operations were directed to bringing plaintiff up to the minimum standards for Toyota dealers as published in Toyota's National Dealer Standards Manual.[1] To this end, GST contends that it had the right to require plaintiff to become a single line dealer, and to withhold a new franchise agreement from plaintiff upon his failure to meet minimum standards.[2]

Defendants TMS and TMD contend that they exercise no control over GST, a wholly independent company, and have had nothing whatsoever to do with the refusal of GST to enter into a new franchise agreement with plaintiff. Further, they allege that they had no knowledge of the refusal or of the reasons therefor until after the refusal had occurred. These defendants further state that, until the time of the filing of this lawsuit, plaintiff never contacted or complained to either TMS or TMD.[3] Defendants TMS and TMD now seek summary judgment concurrently with plaintiff's efforts to obtain injunctive relief.

This case is initially on the motion docket of this Court on plaintiff's motion for preliminary injunction, requesting the Court to require GST to supply plaintiff with automobiles and parts pending final resolution of this case. An oral hearing on the preliminary injunction has been requested. It should be noted that plaintiff ultimately seeks only money damages, and has not requested relief by way of permanent injunction.

While injunctive relief is not available under the Automobile Dealers' Act, some courts have granted injunctions in cases similar to this, ruling that equitable relief is not cut off by the Act. The majority of those cases, however, granted injunctive relief either (1) in cases where the previous franchise agreement had not yet expired,[4] or (2) in cases where the automobile dealer was a sin-

---

1. Defendants TMS and TMD's brief in opposition to plaintiff's Motion for Preliminary Injunction, Exhibit "F" [hereinafter cited as defendants TMS and TMD's brief].

2. "Gulf States asked plaintiff to become a single line Toyota dealer at plaintiff's Westheimer location for one reason: its facilities were too small in terms of area adequately and efficiently to service its customers and new-car purchasers." Defendant GST's brief in opposition to plaintiff's Motion for Preliminary Injunction at 14.

3. *Id.* at 3.

4. *See, e. g.* Madsen v. Chrysler Corp., 261 F.Supp. 488 (N.D.Ill.1966), vacated as moot, 375 F.2d 773 (7th Cir. 1967); *Cf.* Bateman v. Ford Motor Co., 302 F.2d 63 (3d Cir. 1962) on remand, 204 F. Supp. 357 (E.D.Pa.), rev'd 310 F.2d 805 (3d Cir.), on remand, 214 F.Supp. 222 (1963).

gle-line dealer, and irreparable damage would have occurred.[5]

A majority of cases disallow injunctive relief for various reasons: (1) that money damages, while difficult to ascertain, are calculable and are proper and adequate relief;[6] (2) that to grant injunctive relief would be to decree specific performance of an agreement not of the type which is traditionally specifically enforceable;[7] and (3) that an injunction imposes an impossible task of supervising continuous performance.[8]

In Autowest, Inc. v. Peugeot, Inc., 287 F.Supp. 718 (E.D.N.Y.1966), a preliminary injunction was denied where the franchise agreement involved had terminated by its expressed terms prior to the time lawsuit was filed. The court reasoned that an injunction would not preserve the status quo, but would instead define a new contract. And in Miller Plymouth Center, Inc. v. Chrysler Motors Corp., 286 F.Supp. 529 (D.C.Mass. 1968) Motion for Preliminary Injunction was similarly denied. There, the court reasoned that injunctive relief would, in effect, amount to a decree of specific performance of the agreement, and that this agreement was not of the type which was traditionally specifically enforceable. Further, the *Miller* court found that an adequate remedy was available to plaintiff by way of damages. *See also* Sam Goldfarb Plymouth, Inc. v. Chrysler Corp., 214 F.Supp. 600 (E.D. Mich.1962); Community Chevrolet, Inc. v. General Motors Corp., 248 F.Supp. 390 (D.C.Mass.1965).

In ruling on the propriety of granting a preliminary injunction in a case of this type, the court must consider whether the status quo would effectively be preserved by the granting of an injunction, and whether irreparable harm will result if injunctive relief is denied. The court must also consider plaintiff's likelihood for ultimate success in this suit; that is, here, whether plaintiff can show lack of good faith per se by the defendant in which coercion, intimidation or threats were determining factors in the failure to renew the franchise agreement. 15 U.S.C. § 1221(e); Globe Motors, Inc. v. Studebaker-Packard Corp., 328 F.2d 645, 646 (3d Cir. 1964).

After having studied the pleadings, briefs and depositions on file in this action, I find that the granting of an injunction would not maintain the status quo. Plaintiff's Toyota franchise was terminated in February of 1970. It was not until four months later, in July, 1970, that plaintiff filed suit, and five months more elapsed before injunctive relief was requested. Certainly there is little reason to grant an injunction in an effort to reinstate a dealership that has been defunct for almost a year. Moreover, plaintiff's long delay in seeking injunctive relief serves to strengthen this Court's belief that no irreparable injuries have been sustained by plaintiff. After termination of the Toyota franchise, plaintiff continued its operation, selling its other already established line of imported automobiles, and obtained a new replacement franchise. Plaintiff has made no changes or alterations in its River Oaks facility in reliance upon an existing franchise or the promise of a new one. *Compare* the facts here *with* Madsen v. Chrysler Corp., 261 F.Supp. 488 (N.D.Ill.1966), vacated as moot, 375 F.2d 773 (7th Cir. 1967). On the other hand, GST has made significant changes in its representation in the Houston area since the termination of plaintiff's franchise. Specifically, two new Toyota dealers, Katy Road Toyota and Palm

5. *See* Madsen v. Chrysler Corp., 261 F. Supp. 488 (N.D.Ill.1966), vacated as moot, 375 F.2d 773 (7th Cir. 1967).

6. Miller Plymouth Center, Inc. v. Chrysler Motors Corp., 286 F.Supp. 529, 531–532 (D.C.Mass.1968), and cases cited therein.

7. *Id.;* Autowest, Inc. v. Peugeot, Inc., 287 F.Supp. 718, 720 (E.D.N.Y.1966).

8. Miller Plymouth Center, Inc. v. Chrysler Motors Corp., 286 F.Supp. 529, 531–532 (D.C.Mass.1968); Thayer Plymouth Center, Inc. v. Chrysler Motors Corp., 63 Cal. Rptr. 148 (Cal.App.1967).

Center Toyota, have been appointed.[9] These dealers, as well as the distributor, GST, have made long term plans and financial commitments in reliance upon the business agreements.[10]

Plaintiff is further burdened by the necessity of proving lack of good faith by way of threat or coercion upon the part of the distributor. The Dealers' Act does not require an automobile manufacturer or distributor to retain a dealer who is not providing adequate representation of a manufacturer. A franchise is not "a marriage for life", and a good faith termination should be upheld. Bateman v. Ford Motor Co., 302 F.2d 63, 66 (3d Cir. 1962); Woodard v. General Motors Corp., 298 F.2d 121, 128 (5th Cir. 1962). See Zebelman v. Chrysler Corp., 299 F.Supp. 653, 657 (E.D.Mo. 1968). Even an arbitrary non-renewal, absent coercion, is not grounds for recovery under the Dealers' Act. Berry Bros. Buick, Inc. v. General Motors Corp., 257 F.Supp. 542, 546 (E.D.Pa. 1966), aff'd per curiam, 377 F.2d 552 (3d Cir. 1967). In my opinion, the facts show that defendant GST's conduct has not necessarily transcended the limits of recommendation, persuasion or argument, which conduct is privileged under the Act. As to defendants TMD and TMS, plaintiff shows no conduct or contractual relationship which binds them and makes them parties to the actions of GST in this case. They have no control over the operation of this independent company; they did not condition the appointment of GST as the southwestern region distributor upon the dealer's performance standards which GST seems to have adopted.

Having balanced the equities between parties, I must conclude that plaintiff is not entitled to the extraordinary remedy of a preliminary injunction. See G. W. McCarter, d/b/a Aubrey, Orval & Mac v. Nissan Motor Corp. in U.S.A., C.A. No. 67–H–784, S.D.Tex. (October 31, 1967) in which Judge Hannay similarly refused to grant a temporary injunction.

I turn now to a consideration of the Motions for Summary Judgment filed by defendants, TMS and TMD. Defendant GST has not as yet filed such Motion, although there is an indication in the brief of the other defendants that it plans to do so in the near future. After due consideration of the arguments and authorities advanced by TMS and TMD in support of their positions, I do not believe that summary judgment is appropriate in this instance. The present posture of the proof does not permit the conclusion to be reached that there no longer remain any genuine issues as to any material fact. Instead, there would appear to be potential unresolved fact issues among others as to the impartiality and consistency with which GST imposed service and sales standards on its various franchisees, as to whether plaintiff has been shown to be an inefficient and undesirable dealer who is not providing the manufacturer or distributor with adequate representation, and as to the effect of the action of all defendants when viewed in concert. For these reasons, Motion by defendants, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Distributors, Inc., for Summary Judgment is denied.

In view of the above findings and conclusions reached on the basis of the present record with reference to plaintiff's Motion for a preliminary injunction, it has not been thought necessary to set down the matter for oral hearing. This Memorandum accordingly constitutes findings of fact and conclusions of law relative thereto. Furthermore, no part of this Memorandum is to be construed as an expression of opinion or ruling upon the merits of plaintiff's action for damages under any of the Acts alleged. Accordingly, plaintiff's Motion for Temporary Injunction is denied without prejudice to the claim for damages herein.

9. Deposition of Mr. Purdy E. Cole at 17–18, as noted in defendants TMS and TMD's brief at 23.

10. Id.